IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS A. LEHNER,               :

    Plaintiff,               :

v.                               :               Civil Action No. GLR-18-858

PROSOURCE CONSULTING LLC,       :

    Defendant.              :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant ProSource Consulting LLC's ("ProSource") Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 28).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant in part and deny in part the Motion.

## I.    BACKGROUND[2]

On December 1, 2017, ProSource's Chief Executive Officer, Donna Cooper, contacted Lehner via e-mail to discuss an employment opportunity. (Am. Compl. ¶ 3, ECF No. 22). Cooper contacted Lehner again on December 4, 2017, stating that she

---

[1] Also pending is ProSource's Motion to Dismiss Plaintiff's Complaint (ECF No. 14). When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded. Venable v. Pritzker, No. GLR-13-1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014) aff'd, 610 F.App'x 341 (4th Cir. 2015). Accordingly, the Court will deny this Motion as moot.

[2] Unless otherwise noted, the Court takes the following facts from Plaintiff Thomas A. Lehner's Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

"really wanted to speak with him." (Id. ¶ 7). On December 6, 2017, Lehner spoke with Cooper via telephone, and Cooper offer Lehner employment with ProSource as Vice President of Operations. (Id. ¶ 8). Lehner told Cooper that he had already accepted a Vice President position with another company that was located in Maryland and would begin work there on December 11, 2017. (Id. ¶¶ 9–10). Cooper then asked Lehner to meet in person the next day. (Id.).

Lehner and Cooper met at the Marriott Hotel in Bethesda, Maryland. (Id. ¶¶ 12, 14). They discussed Lehner forgoing the position he had accepted to work as Vice President of Operations at ProSource. (Id. ¶¶ 13–14). Lehner reiterated to Cooper that he had already accepted a position with another company and would begin working there on December 11, 2017. (Id. ¶ 15). Lehner also told Cooper that the company would pay him an annual salary of $140,000.00 plus a $5,000.00 signing bonus. (Id. ¶ 16).

To "induce" Lehner to forgo employment with the other company, Cooper offered Lehner a Vice President position at ProSource with a $140,000.00 yearly salary plus a $10,000.00 bonus payable upon signing. (Id. ¶¶ 17–18, 52). As further inducement for Lehner leave his job with the other company, Cooper told Lehner that there would be "significant room for advancement within ProSource." (Id. ¶¶ 19, 50). Cooper also stated that ProSource would complete a federal background check on him. (Id. ¶ 51). Lehner and Cooper ultimately agreed that ProSource would pay Lehner a $140,000.00 annual salary, a $10,000.00 "immediate" signing bonus (the "Signing Bonus"), and relocation expenses. (Id. ¶ 20).

The same day as the in-person meeting, Cooper e-mailed Lehner an offer letter (the "Employment Contract"), which Lehner signed. (Id. ¶¶ 22–23; Def.'s Mot. to Dismiss ["Def.'s Mot."] Ex. A ["Emp't Contract"], ECF No. 28-3; Pl.'s Mem. P & A Supp. Opp'n ["Pl.'s Opp'n"] Ex. 1, ECF No. 31-2). Lehner then informed the other company that he had accepted a position with ProSource and would not begin work on December 11, 2017. (Am. Compl. ¶ 24).

On December 11, 2017, Lehner began working at ProSource. (Id. ¶ 25; Emp't Contract). On December 14, 2017, just three days after he started working for ProSource, Cooper terminated Lehner. (Am. Compl. ¶ 25). Cooper told Lehner, "I moved to[o] quickly in hiring you." (Id. ¶ 28). ProSource did not pay Lehner the Signing Bonus, nor did it begin Lehner's federal background check. (Id. ¶¶ 31– 32).

On February 13, 2018, Lehner, proceeding pro se, filed a two-Count Complaint against ProSource in the Circuit Court for Howard County, Maryland, alleging breach of contract and wrongful termination. (Compl. ¶¶ 12–21, ECF No. 3). On March 23, 2018, ProSource removed the case to this Court. (ECF No. 1). On March 28, 2018, ProSource filed a Motion to Dismiss for failure to state a claim. (ECF No. 14). On April 23, 2018, Lehner, now represented by counsel, filed an Amended Complaint. (ECF No. 22). The three-Count Amended Complaint alleges: (1) breach of contract (Count I); (2) promissory estoppel (Count II); and (3) negligent misrepresentation (Count III). (Am. Compl. ¶¶ 26– 54). Lehner seeks damages and attorney's fees and costs. (Id. ¶¶ 57–58).

On May 4, 2018, ProSource filed a Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 28). Lehner filed an Opposition on June 1, 2018. (ECF No. 31). ProSource filed a Reply on June 15, 2018. (ECF No. 32).

## II.  DISCUSSION

### A.  <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).  Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v.</u>

McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record.

Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

In this case, both Lehner and ProSource attached documents outside of the Amended Complaint, including the Employment Contract. Lehner's breach of contract claim is premised on ProSource's alleged breach of the Employment Contract. The Amended Complaint states that the Employment Contract is attached as "[E]xhibit A" and "is made part of" the Amended Complaint, (Am. Compl. ¶ 23), but Lehner did not attach it. Because the Employment Contract is integral to and explicitly relied on in the Amended Complaint and neither party challenges its authenticity, the Court will consider it in determining whether to dismiss the Amended Complaint. The Court excludes all other attached documents from its consideration because they are not integral to or explicitly relied on in the Amended Complaint.

**B.**   <u>**Analysis**</u>

ProSource moves to dismiss Lehner's breach of contract and negligent misrepresentation claims under Rule 12(b)(6) on the grounds that they fail to state a claim.[3] The Court addresses Lehner's claims in turn.

---

[3] ProSource also moves to dismiss Lehner's promissory estoppel claim under Rule 12(b)(6) for failure to state a claim. Specifically, ProSource argues that Lehner cannot maintain a quasi-contractual promissory estoppel claim where, as here, there is an

6

## 1. Breach of Contract

Lehner brings a breach of contract claim against ProSource for: (1) failing to pay Lehner the Signing Bonus; (2) orally terminating the Employment Contract; (3) failing to initiate a federal background check of Lehner; and (4) a breach of the duty of good faith and fair dealing.

At bottom, the Court will not dismiss Lehner's breach of contract claim in its entirety because the Employment Contract is ambiguous. The Court will, however, dismiss Lehner's breach of contract claim to the extent it is based on Cooper's oral termination of the Employment Contract, failure to initiate a federal background check, and violation of the duty of good faith and fair dealing. The Court first addresses the Signing Bonus.

### a. Signing Bonus

ProSource argues that it did not breach the Employment Contract because Lehner did not satisfy the conditions precedent required to receive the Signing Bonus—namely, completing a federal background check and permanently relocating to Virginia. Lehner, for his part, contends that the plain language of the Employment Contract requires

---

enforceable contract between the parties—the Employment Contract. Lehner does not challenge dismissal of the promissory estoppel claim. Accordingly, the Court will dismiss the promissory estoppel claim.

In addition, ProSource seeks dismissal of Lehner's request for an award of attorney's fees. Lehner concedes that the causes of action in the Amended Complaint do not support an award of attorney's fees. Lehner, however, reserves the right to amend his pleadings to add a cause of action that would support an award of attorney's fees. Because the Court has not entered a judgment in favor of Lehner—and may never do so—the Court declines to opine on Lehner's request for attorney's fees at this time.

ProSource to pay Lehner the Signing Bonus upon signing, and that it is not subject to any conditions precedent. Alternatively, Lehner maintains that the Employment Contract is ambiguous, which precludes granting a motion to dismiss. The Court agrees with Lehner that the Employment Contract is ambiguous.

Under Maryland law,[4] to establish a breach of contract claim, the plaintiff must allege that: (1) "the defendant owed the plaintiff a contractual obligation"; and (2) "the defendant breached that obligation." Palermino v. Ocwen Loan Servicing, LLC, No. TDC-14-0522, 2015 WL 6531003, at *4 (D.Md. Oct. 26, 2015) (quoting Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001)).

"The fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis." Ford v. Antwerpen Motorcars Ltd., 117 A.3d 21, 25 (Md. 2015) (quoting Curtis G. Testerman Co. v. Buck, 667 A.2d 649, 654 (Md. 1995)). Maryland follows the law of objective interpretation of contracts, which gives plain meaning to the unambiguous language of the agreement. DIRECTV, Inc. v. Mattingly, 829 A.2d 626, 632 (Md. 2003). This type of interpretation considers "what a reasonably prudent person in the same position would have understood as to the meaning of the agreement." Cochran v. Norkunas, 919 A.2d 700, 710 (Md. 2007) (citing Walton v. Mariner Health, 894 A.2d 584, 594 (Md. 2006)).

---

[4] The parties agree that Maryland law governs this case. (Def.'s Mem. Supp. Mot. Dismiss at 7, ECF No. 28-2; Pl.'s Opp'n at 5, ECF No. 31-1).

Ambiguous contract terms are factual determinations that preclude dismissal on a motion to dismiss for failure to state a claim. Manning v. Mercatanti, 898 F.Supp.2d 850, 860 (D.Md. 2012). Contract terms are ambiguous when "the language of the contract is susceptible of more than one meaning to a reasonably prudent person." Id. (quoting Auction & Estate Representatives, Inc. v. Ashton, 731 A.2d 441, 444–45 (Md. 1999)). To determine whether a contract's language is susceptible to more than one meaning, the court considers "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." MAMSI Life & Health Ins. Co. v. Callaway, 825 A.2d 995, 1005 (Md. 2003) (quoting Pac. Indem. v. Interstate Fire & Cas., 488 A.2d 486, 488 (Md. 1985)).

In this case, it is undisputed that the Employment Contract is indeed a valid and enforceable contract. The offer letter was ProSource's offer, Lehner's signature shows his acceptance, and the $140,000.00 salary and $10,000.00 Signing Bonus are adequate consideration. See Thaler v. Donald J. Trump for President, Inc., 304 F.Supp.3d 473, 477 (D.Md.), aff'd, 730 F.App'x 177 (4th Cir. 2018) (noting that under Maryland law, contract formation requires an offer, acceptance, and consideration).

Lehner alleges that ProSource breached the Employment Contract by failing to pay him a $10,000.00 Signing Bonus upon signing the Employment Contract. ProSource argues that the Signing Bonus is subject to two condition precedents: passing a federal background check and permanently relocating to Virginia. The Employment Contract, in relevant part, states:

This offer is contingent upon your successful completion of a federal government background check and your permanent relocation to Virginia. . . .

As full compensation for your services, ProSource . . . will compensate you as a full-time employee at **$140,000 per year** with a **$10,000 Signing Bonus** . . . You will also receive a one[-]time only **$5,000 Relocation Expense Package** payable back to ProSource within 90 days if relocation does not occur by the end of January 2018.

(Emp't Contract).

Here, both parties offer reasonable interpretations of when the Signing Bonus is to be paid. ProSource maintains that the phrase "contingent upon" makes Lehner passing a federal background check and relocating to Virginia conditions precedent to payment of the Signing Bonus. ProSource overlooks, however, that this interpretation makes the entire job offer, not just the Signing Bonus, subject to the two conditions precedent. In other words, ProSource's interpretation precludes Lehner's acceptance of the offer, which, in turn, prevents the creation of a binding contract. As noted earlier, neither party argues that the Employment Contract is not a binding contract. In fact, ProSource's primary reasoning for dismissing Lehner's promissory estoppel claim is that the Employment Contract is a binding contract. ProSource's interpretation also necessarily implies that Lehner was not a ProSource employee, and therefore it would not have been necessary for Cooper to terminate his employment. The implications of ProSource's interpretation do not, however, make the interpretation unreasonable. See Cochran, 919 A.2d at 710 (citing Walton, 894 A.2d at 594 ).

Lehner counters that the Signing Bonus was not subject to conditions precedent; if anything the purported conditions precedent are "conditions of continued employment with ProSource." (Pl.'s Opp'n at 8). Lehner points to the provision of the Employment Contract which expressly states that ProSource will compensate Lehner "as a full-time employee at $140,000 per year with a $10,000 Signing Bonus" and a "one[-]time only $5,000 Relocation Expense Package payable back to ProSource within 90 days if relocation does not occur by the end of January 2018." (Emp't Contract). He contends that the clause "if relocation does not occur by the end of January 2018" makes clear that relocation to Virginia is not a condition precedent to his employment with ProSource. Indeed, the clause regarding the Relocation Expense Package implies that ProSource will pay Lehner's relocation expenses prior to his relocating, and that Lehner is obligated to return the relocation expenses if he fails to move to Virginia by the end of January 2018. Yet, the Employment Contract does not expressly provide for when ProSource was obligated to pay the Relocation Expense Package or Signing Bonus. Because the Employment Contract does not specify when the Signing Bonus is to be paid, it would be reasonable to interpret it as making the Signing Bonus payable immediately upon signing. See MAMSI Life, 825 A.2d at 1005 (quoting Pac. Indem., 488 A.2d at 488).

Nevertheless, ProSource argues that signing bonuses can be subject to conditions precedent, and merely stating "signing bonus" does not conclusively mean that a signing bonus must be paid upon signing. While this may be true, in the cases ProSource relies on, the condition precedent is unambiguous, undisputed, or directly connected to the

signing bonus. <u>See, e.g.</u>, <u>Enovative Techs., LLC v. Leor</u>, No. JKB-14-3956, 2015 WL 5738256, at *3 (D.Md. Sept. 29, 2015) (stating that the signing bonus was paid "on the condition that [the employee] stay employed with [the employer] for a full year); <u>Hermina v. Safeway, Inc.</u>, No. WMN-11-1523, 2012 WL 12759, at *4 (D.Md. Jan. 3, 2012) (stating that the employee's hiring bonus was "conditioned upon her being employed for three years"). This is not the case here, however. As discussed above, it is unclear whether the federal background check and relocation to Virginia are conditions precedent or whether they are even connected to the Signing Bonus.

Further, the Employment Contract was in the form of an offer letter that was meant to formalize Lehner and Cooper's conversation at their in-person meeting—and Lehner and Cooper may have left the meeting with different understandings of their agreement. <u>See</u> <u>MAMSI Life</u>, 825 A.2d at 1005 (quoting <u>Pac. Indem.</u>, 488 A.2d at 488). Thus, the Employment Contract is susceptible to more than one meaning. Consequently, the Court concludes that the Employment Contract is ambiguous as to if and when the Signing Bonus was to be paid.

Because the Employment Contract is ambiguous, the Court cannot dismiss Lehner's breach of contract claim. <u>See</u> <u>Manning</u>, 898 F.Supp.2d at 860. The Court will, therefore, deny ProSource's Motion to the extent that it seeks to dismiss Lehner's breach of contract claim based on ProSource's failure to pay the Signing Bonus.

### b. Oral Termination and Federal Background Check

ProSource argues that Lehner's termination with oral notice, instead of written notice, does not constitute a material breach of the Employment Contract. Lehner does not address this argument. When a party fails to address an argument made in the motion to dismiss, the Court considers the claim abandoned. Muhammad v. Maryland, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim."). The Court, therefore, concludes that Lehner has abandoned his breach of contract claim premised on Cooper's oral termination of the Employment Contract.

Likewise, ProSource contends that under the express terms of the Employment Contract it was not under any obligation to "initiate a federal background check." (Am. Compl. ¶ 32). Lehner, again, does not address this contention in his Opposition. The Court, therefore, concludes that Lehner has abandoned his breach of contract claim based on ProSource's failure to initiate a federal background check.

Accordingly, the Court will grant ProSource's Motion to the extent it seeks to dismiss Lehner's breach of contract claim premised on Cooper's oral termination of his employment and ProSource's failure to conduct a background check.

### c. Implied Covenant of Good Faith and Fair Dealing

ProSource asserts that under Maryland law, at-will employment contracts do not contain an implied covenant of good faith and fair dealing. As a result, ProSource

maintains, Lehner's breach of contract claim based on a breach of the implied covenant of good faith and fair dealing fails. The Court agrees.

"At-will employment is an employment contract of indefinite duration, and can be legally terminated by either party at any time." Jarvis v. Enter. Fleet Servs. & Leasing Co., No. DKC 2007-3385, 2009 WL 10685552, at *4 (D.Md. Feb. 12, 2009) (citing Suburban Hosp., Inc. v. Dwiggins, 596 A.2d 1069, 1073 (Md. 1991)). A handful of courts have implied a covenant of good faith and fair dealing into employment contracts. Id. Maryland, however, has refused to do so, specifically with regard to termination, and as a "general requirement." Suburban Hosp., 596 A.2d at 1077.

Here, the Employment Contract states that "ProSource is an at-will employer and continuation of employment is not guaranteed for a specific length of time." (Emp't Contract). It further states, "Either you or ProSource may terminate this agreement at any time for any reason, with or without cause." (Id.). Lehner does not dispute that the terms of the Employment Contract made his employment with ProSource at-will. Nor does Lehner address ProSource's argument. Thus, the Court concludes that Lehner fails to state a breach of contract claim based on ProSource's purported breach of the implied covenant of good faith and fair dealing. Accordingly, the Court will grant ProSource's Motion to the extent it moves to dismiss Lehner's breach of contract claim based on a breach of the covenant of good faith and fair dealing.

## 2.     Negligent Misrepresentation

Lehner bases his negligent misrepresentation claim on five of Cooper's statements: (1) "that there was promotional opportunty" with ProSource; (2) that ProSource "would cause a federal background check to be completed"; (3) that ProSource "would pay a signing bonus to [Lehner] upon signing" the Employment Contract; (4) that Lehner "would work for an extended period of time" with ProSource; and (5) that Lehner "would have full time employment" with ProSource. (Am. Compl. ¶¶ 50–54).

The state a negligent misrepresentation claim under Maryland law, the plaintiff must allege the following five elements:

> (1)  the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
> (2)   the defendant intends that his statement will be acted upon by the plaintiff;
> (3)  the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
> (4)  the plaintiff, justifiably, takes action in reliance on the statement; and
> (5)  the plaintiff suffers damage proximately caused by the defendant's negligence.

Martens Chevrolet v. Seney, 439 A.2d 534, 539 (Md. 1982).

ProSource advances three principal arguments for dismissing Lehner's negligent misrepresentation claim: (1) Lehner fails to allege sufficient facts to state a negligent misrepresentation claim; (2) Lehner's claim is premised on future, predictive statements,

which fail as a matter of law; and (3) Lehner could not have justifiably relied on Cooper's statements.

### a. Failure to allege sufficient facts

ProSource first argues that Lehner fails to plead sufficient facts to state a negligent misrepresentation claim. The Court agrees for two reasons. First, unlike Counts I and II, Count III of the Amended Complaint does not contain a paragraph that re-alleges and incorporates by reference the preceding paragraphs in the Amended Complaint. (Compare Am. Compl. ¶¶ 26–46, with id. ¶¶ 47–54). Second, in Count III Lehner alleges only the first element of a negligent misrepresentation claim—duty and negligent assertion of a false statement—and then lists the purported false statements. He does not allege elements two through five. Notwithstanding these deficiencies in Count III of the Amended Complaint, Lehner alleges sufficient factual matter to state a negligent misrepresentation claim, which is what is required to survive a motion to dismiss. see Goss, 917 F.Supp.2d at 449 (quoting Walters, 684 F.3d at 439). As a result, the Court will grant Lehner leave to amend his pleading to address these deficiencies. The Court next addresses the elements of the claim.

With regard to the first element, Lehner pleads that ProSource "owed [him] a duty of care" and that Cooper made the alleged negligent misrepresentations during pre-employment negotiations. (See Am. Compl. ¶¶ 3, 13, 17, 47). Lehner has sufficiently pled facts establishing that ProSource owed Lehner a duty of care based on the "prospective employer-employee relationship." Goode v. Am. Veterans, Inc., 874

F.Supp.2d 430, 454 (D.Md. 2012) (citing <u>Giant Food, Inc. v. Ice King, Inc.</u>, 536 A.2d 1182, 1185 (Md.Ct.Spec.App. 1988)) (noting that in the context of pre-employment negotiations, "the employer owes a duty to speak with reasonable care"). Lehner further pleads that "ProSource through Donna Cooper" "negligently asserted false statements" to Lehner and details these statements. (<u>See</u> Am. Compl. ¶¶ 7, 49–55). Lehner, therefore, pleads sufficient facts to satisfy the first element—duty of care and negligently asserted false statements.

Lehner has also adequately alleges the second and third elements of a negligent misrepresentation claim—intent that the plaintiff will rely on the statement and knowledge that the plaintiff will probably rely on the statement. Lehner alleges that Cooper made the negligent statements during a pre-contractual employment meeting. According to Lehner, the purpose of the meeting was to convince Lehner to leave the job he had accepted to become Vice President of Operations for ProSource. (Am. Compl. ¶¶ 13–14). At the meeting, Lehner again informed Cooper that he had accepted a position with another company. (<u>Id.</u> ¶ 15). He further informed Cooper that the company would pay him a $140,000.00 annual salary and $5,000.00 signing bonus. (<u>Id.</u> ¶ 16). To "induce" Lehner to leave the job he accepted, Cooper offered Lehner a Vice President position at ProSource with a $140,000.00 annual salary and a $10,000.00 Signing Bonus "payable upon signing." (<u>Id.</u> ¶¶ 17–18). Cooper also told Lehner that "there would be significant room for advancement within ProSource," that Lehner would work for ProSource for an extended period of time, and that Lehner would have full-time

employment at ProSource. (Id. ¶¶ 19, 53, 54). Taking these factual allegations to be true and construing them in a light most favorable to Lehner, it is reasonable to infer that Cooper intended Lehner to act on these statements in deciding whether to enter into an employment relationship with ProSource. Likewise, it is reasonable to infer that Cooper knew Lehner would probably rely on her statements, given that he had to decide between employment with the other company and employment with ProSource. It is also reasonable to infer that Cooper knew that if Lehner relied on her statements, resigned from his position with the other company, and the employment offer from ProSource fell through, Lehner would lose his position with the other company—and the salary and signing bonus that came with it.

As to the fourth and fifth elements, Lehner pleads sufficient facts to permit the Court to infer that he justifiably relied on Cooper's statements and suffered damages as a result of those statements. Lehner alleges that Cooper made the statements at issue "[t]o induce" him to leave the other company and accept employment with ProSource. (Id. ¶ 17). Given that Cooper made her statements during pre-employment negotiations and Cooper was aware that Lehner had accepted a position with another company, it was reasonable for Lehner to rely on her statements when deciding whether to accept ProSource's offer of employment. Lehner further pleads that he resigned his prior position, began employment with ProSource on December 11, 2017, and was terminated three days later. Because Lehner withdrew from the position with the other company, lost

his position at ProSource, and never received the Signing Bonus, Lehner plausibly alleges that he suffered an injury as a result of Cooper's statements.

In short, because Lehner's failure to state a negligent misrepresentation claim is due to technical errors in his Amended Complaint and, as discussed below, he otherwise states a claim with regard to four of the alleged statements, the Court will grant Lehner leave to amend his pleading.

### b.    Negligent Assertion of a False Statement

ProSource contends that Cooper's statements are future, predictive statements, and therefore they cannot provide the basis for a negligent misrepresentation claim as a matter of law. Lehner counters that Cooper's statements are actionable misrepresentations because they are regarding matters within her exclusive control. The Court is not persuaded by ProSource's argument.

In general, under Maryland law, "an action for fraud will lie only for misrepresentation of past or existing facts," not future promises. 200 N. Gilmor, LLC v. Capital One, Nat. Ass'n, 863 F.Supp.2d 480, 492 (D.Md. 2012). (quoting Learning Works, Inc. v. Learning Annex, Inc., 830 F.2d 541, 546 (4th Cir. 1987)). The "breach of a promise to render a performance in the future is redressable only by an action in contract." Id. (quoting Learning Works, 830 F.2d at 546). A negligent misrepresentation claim may, however, be based on a promise of future conduct if the party making the statement knows at the time the statement is made that "it does not intend to carry out the promise." Id. (citing Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc., 264

F.Supp.2d 282, 291 (D. Md. 2003)). Similarly, "a statement concerning future events" may support a negligent misrepresentation claim "if it relates to matters within the speaker's exclusive control, rather than an expectation or prediction of future events." Abercrombie v. Nationwide Mut. Ins. Co., 999 F.Supp. 660, 664 (D.Md. 1998), aff'd, 168 F.3d 481 (4th Cir. 1999) (summarizing the holding of Weisman v. Connors, 540 A.2d 783 (Md. 1988)).

ProSource contends that Cooper's statement that she "moved to[o] quickly in hiring [Lehner]," (Am. Compl. ¶ 28), shows that Cooper did not have an "existing intention not to perform." (Def.'s Mot. at 28). ProSource argues that Cooper's statement indicates, at most, a hiring mistake. Although that may be true, it does not negate or defeat the facts Lehner pled, nor must the Court accept ProSource's assertion as true at this stage in the litigation. See Albright, 510 U.S. at 268.

Here, assuming the facts alleged in the Amended Complaint are true and construing them in the light most favorable to Lehner, Cooper reasonably may have had an existing intention not to perform. Cooper tried reaching Lehner twice before actually meeting with him. Cooper knew Lehner had accepted another job offer and was scheduled to start work in a few days. Cooper nevertheless extended Lehner a job offer and then terminated Lehner three days after he started work at ProSource, stating "I moved to[o] quickly in hiring you." (Am. Compl. ¶ 28). This statement can be taken to mean that Cooper knew she was acting hastily in hiring Lehner and never intended to retain him as an employee. The Court, therefore, concludes that Lehner has pled

sufficient facts for the Court to reasonably infer that Cooper may have had the existing intention not to perform. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).[5]

Further, Lehner alleges that Cooper is ProSource's "Chief Executive Officer" and that ProSource contacted him "through Cooper." (Am. Compl. ¶¶ 3, 7, 28). Lehner also pleads that Cooper contacted him to "discuss an employment opportunity," offered him a position as Vice President of Operations at ProSource, sent him the Employment Contract, and ultimately terminated his employment. (Id. ¶¶ 3, 8). These factual allegations establish that Cooper, as ProSource's CEO, handled the hiring and firing decisions at ProSource. It would, therefore, be reasonable to infer that Cooper had exclusive control over the statements she made to induce Lehner to accept a position with ProSource. Accord Allen v. Hamilton, 80 F.Supp.3d 241, 246 (D.D.C. 2015) (applying Maryland law) (granting the defendant's motion to dismiss where the manager "made it explicitly clear that approval from other people was necessary before [a] salary increase could be given"). Thus, Lehner pleads sufficient facts to establish that Cooper made false statements.

---

[5] The Court notes that if Lehner establishes that Cooper had the present intention not to perform at the time she made the alleged statements, his claim is one for fraudulent misrepresentation as opposed to negligent misrepresentation. 200 N. Gilmor, 863 F.Supp.2d at 493 (quoting Heritage Oldsmobile, 264 F.Supp.2d at 291). If this is the case, Lehner's negligent misrepresentation claim will be converted into a fraudulent misrepresentation claim. Id. (citing Heritage Oldsmobile, 264 F.Supp.2d at 291).

### c.    Justifiable Reliance

ProSource argues that Lehner could not have justifiably relied on Cooper's statements because those statements contradict the express terms of the Employment Contract. The Court disagrees with ProSource as to four of the five statements at issue.

Under Maryland law, for a plaintiff to justifiably rely on a statement, the plaintiff must "reasonably believe in the 'full truth' of the misrepresentation." Meerkreebs v. Astor & Sanders Corp., No. PWG-17-695, 2018 WL 1211539, at *5 (D.Md. Mar. 7, 2018) (quoting Bank of Am., N.A. v. Jill P. Mitchell Living Tr., 822 F.Supp.2d 505, 536–37 (D. Md. 2011); see also Goode, 874 F.Supp.2d at 455 ("[A]n action for negligent misrepresentation requires that the plaintiff could 'justifiably take action in reliance' on the alleged statements."); accord CBRE Fin. TRS, LLC v. McCormick, No. 1:08-CV-1964, 2009 WL 4782124, at *6 (D.Md. Dec. 8, 2009), aff'd sub nom. CBRE Realty Fin. TRS, LLC v. McCormick, 414 F.App'x 547 (4th Cir. 2011) (stating, with regard to intentional misrepresentation claims, that "[a]party has a 'right to rely' on misrepresentations only where reliance is reasonable.").

When the plaintiff is party to a written contract, he "cannot reasonably believe in the full truth of an alleged misrepresentation that directly contradicts the terms of a contract" he signed. Meerkreebs, 2018 WL 1211539, at *5 (quoting Bank of Am., 822 F.Supp.2d at 536–37). Put another way, a plaintiff cannot justifiably rely on an oral pre-contractual statement if the subsequent written agreement contradicts the statement. See, e.g., id. (quoting CBRE Fin., 2009 WL 4782124, at *6); see also Call Carl, Inc. v. B.P.

Oil Corp., 554 F.2d 623, 631 (4th Cir. 1977) (concluding that franchisees' reliance on franchisor's pre-contractual oral representation that it would not exercise the non-renewal option in a franchise agreement was unreasonable where the franchise agreement expressly made the contract non-renewable); First Union Nat. Bank v. Steele Software Sys. Corp., 838 A.2d 404, 427 (Md.Ct.Spec.App. 2003) (holding that a party could not have reasonably relied on certain representations because "they contradict the express terms of the [contract]").

In this case, one alleged misrepresentation contradicts the express terms of the Employment Contract—that Lehner "would work for an extended period of time" with ProSource (Am. Compl. ¶ 53). The Employment Contract states, "ProSource is an at-will employer and continuation of employment is not guaranteed for a specific period of time." (Emp't Contract). That term clearly contradicts Cooper's assertion regarding an extensive period of employment at ProSource. See Goode, 874 F.Supp.2d at 455.[6] Thus, Lehner could not have justifiably relied on Cooper's statement that he "would work for

---

[6] Lehner contends that Goode is inapposite because the Court in Goode concluded that the plaintiff's negligent misrepresentation claims survived a motion to dismiss, which is the standard of review for ProSource's Motion. The Goode Court, instead, concluded that the plaintiff's claims did not pass muster under the summary judgment standard. While it is true that the Court in Goode was reviewing the plaintiff's claims in the context of a motion for summary judgment, the Court applied the rule that a party cannot reasonably rely on contradictory statements to an offer letter and an employee handbook, both of which expressly stated that the plaintiff's employment was at will. Goode, 874 F.Supp. 2d at 455. Here, the Court has before it the Employment Contract, which allows the Court to assess whether Lehner's reliance was reasonable. In addition, this Court in Meerkreebs applied this rule at the motion to dismiss stage. 2018 WL 1211539, at *5. Thus, the Court does not find Lehner's argument persuasive.

an extended period of time," (Am. Compl. ¶ 53), for ProSource. <u>See</u> <u>Goode</u>, 874 F.Supp.2d at 455.

The Employment Contract does not, however, contradict Cooper's other statements. With regard to promotional opportunity at ProSource, the Employment Contract states, "Additional bonuses will be based on performance and in the best interest of both parties to revisit this discussion in the future." (Emp't Contract). This term does not contradict Cooper's statement that there was "promotional opportunity" at ProSource. (Am. Compl. ¶ 50). As to the background check, the Employment Contract is silent as to who would conduct it, and therefore the Employment Contract does not contradict Cooper's statement that ProSource "would cause a federal background check to be completed." (<u>Id.</u> ¶ 51). Similarly, the Employment Contract does not expressly state when the Signing Bonus would be paid. As a result, the Employment Contract does not contradict Cooper's statement that ProSource "would pay a signing bonus to [Lehner] upon signing the offer." (<u>Id.</u> ¶ 52). Further, the Employment Contract repeatedly states that the position is full-time, which is consistent with Cooper' statement regarding full-time employment.

In sum, the Court will not dismiss Lehner's negligent misrepresentation claim in its entirety. Accordingly, the Court will grant in part and deny in part ProSource's Motion.

Having determined that Lehner states a negligent misrepresentation claim as to four of the five alleged statements, upon the filing of the Second Amended Complaint, ProSource shall file a responsive pleading within fourteen days.

### III.     CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part ProSource's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 28). The Court will also deny as moot ProSource's Motion to Dismiss Plaintiff's Complaint (ECF No. 14). A separate order follows.

Entered this 6th day of December, 2018

_____/s/_____
George L. Russell, III
United States District Judge
